UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| CHASE HELVEY, ) | |
| ) | |
| Plaintiff, ) | Case No. 5:19-cv-00136-GFVT-MAS |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| LEXINGTON-FAYETTE URBAN ) | **&** |
| COUNTY GOVERNMENT, *et al*., ) | **ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on a Motion to Strike filed by the Corizon Defendants. [R. 63.] For the reasons that follow, this motion will be DENIED.

**I**

On March 29, 2018, Plaintiff Chase Helvey was arrested and booked into the Fayette County Detention Center on charges of murder, assault, kidnapping, and tampering with physical evidence. [R. 52-1; R. 62-3 at 2.] This lawsuit arose out of claims by Mr. Helvey that he received inadequate medical care and treatment at the Detention Center. [R. 1.] Mr. Helvey filed suit on April 1, 2019. *Id.*

Mr. Helvey retained addiction medicine specialist Dr. Richard Blondell as an expert in this case to address the standard of care that he should have received at the Detention Center. The Corizon Defendants contend that Dr. Blondell's criticisms are too general and vague, and that Mr. Blondell failed to review Corizon's policies. [R. 63.]

## II

### A

In a diversity case, federal law generally governs procedural and evidentiary issues, including the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Admissibility of expert testimony is governed specifically by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Sixth Circuit has identified three specific Rule 702 requirements in deciding the admissibility of proposed expert testimony. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008); *see also United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016). First, the proposed expert must have the requisite qualifications, whether it be through "knowledge, skill, experience, training, or education." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (quoting Fed. R. Evid. 702).

Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting Fed. R. Evid. 702). In determining whether an expert's testimony will be relevant, courts look to "whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Rios*, 830 F.3d at 413 (quoting Fed. R. Evid. 702, Adv. Comm. Notes).

Third, the testimony must be reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. Rule 702 provides several criteria by which a district court, in its gatekeeper role, should gauge the reliability of expert testimony. A court should look to whether the testimony is based upon "sufficient facts or data;" whether it is the "product of reliable principles and methods;" and whether the expert "has applied these principles or methods reliably to the facts of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (quoting Fed. R. Evid. 702). In determining reliability, a district court should also consider "such factors as testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific [or technical] community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593–94). The reliability inquiry is a flexible one, and the above factors are not a "definitive checklist or test." *Daubert*, 509 U.S. at 593.

District courts have wide latitude in determining whether a particular expert's testimony is reliable. *See, e.g., Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 672 (6th Cir. 2010); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Notably, in exercising this discretion, a court must be careful not "to impinge on the role of the jury or opposing counsel." *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 377 (6th Cir. 2014). Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

**B**

The Corizon Defendants do not contest Dr. Blondell's qualifications or the relevance of Dr. Blondell's opinion and testimony. Instead, the Corizon Defendants focus on the third requirement and argue that Dr. Blondell's opinions are unreliable in two specific ways: (1) Dr. Blondell's opinions fail to "attribute any alleged breach of the standard of care to any particular actor;" and (2) Dr. Blondell's opinions are "factually wrong" and "not based upon sufficient facts or data." [R. 63 at 12, 14.]

As to the Corizon Defendants' first contention, and as addressed in the Court's prior Opinion and Order, the particular breaches addressed in Dr. Blondell's opinion are attributable to specific defendants, namely Ms. Warner, Dr. Welling, Ms. Feltner, and Ms. Riley. [R. 120 at 30.] The Court is aware that Dr. Blondell did not refer to specific defendants within the "Expert Opinion" section of his report. However, just because the names of particular defendants do not appear within the "Expert Opinion" section of Dr. Blondell's report does not mean that the alleged breaches are not attributable to specific defendants.

Dr. Blondell made his findings with a reasonable degree of medical probability after reviewing jail medical records through April 2018, incident reports, the Complaint, general jail records, and hospital records. [R. 74-11 at 1.] Dr. Blondell has a high level of expertise in the area of opiate withdrawal [R. 21-2] and the Court finds that his testimony "will assist the trier of fact to understand or determine a fact in issue." *McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp. 2d 30, 34 (D.D.C. 2004); Fed. R. Evid. 702. This is a situation in which "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the appropriate means of addressing Dr. Blondell's testimony. *Daubert*, 509 U.S. at 596. Accordingly, the Corizon Defendants' motion will be denied as to their first argument.

As for the second argument, the Corizon Defendants argue that Dr. Blondell has admitted that "he has not reviewed any of Corizon's policies, procedures, or manuals" and because of this, his opinions regarding policies of Corizon should be excluded. [R. 63 at 14.] In response, Mr. Helvey states that he "does not intend to elicit any opinions from Dr. Blondell on direct examination on Defendant Corizon's policies or lack of policies." [R. 90 at 3.]

Only a portion of one of Dr. Blondell's expert opinions within his report implicates a Corizon policy (or lack thereof). In the second half of the second paragraph of Dr. Blondell's expert opinion, he states the following:

> There should have been a policy in place for the medical treatment of withdrawal at the jail, or if benzodiazepines are not to be administered to inmates at the jail, then there should have been a policy to transfer inmates to a facility capable of administering benzodiazepines for the management of benzodiazepine withdrawal.

[R. 74-11 at 4.] Based upon the documents Dr. Blondell reviewed in preparing his report and the fact that Mr. Helvey was not given benzodiazepines to treat his withdrawal symptoms, Dr. Blondell's brief discussion of policy is reasonable. However, as previously established, no such policy against distributing benzodiazepines existed, either by Corizon or the Detention Center itself. [R. 120 at 24.] Therefore, to the extent that Dr. Blondell wishes to opine on a specific policy at the Detention Center against prescribing benzodiazepines, he cannot because it is not true. However, given that Mr. Helvey has articulated that he does not plan to "elicit any opinions from Dr. Blondell on direct examination on Defendant Corizon's policies or lack of policies," [R. 90 at 3] the Court finds it appropriate to deny the Corizon Defendants' motion as moot as to their second argument.

## III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the Corizon Defendants' Motion to Strike **[R. 63]** is **DENIED**.

This the 25th day of January, 2022.

Gregory F. Van Tatenhove
United States District Judge